CIVIL DISTRICT COURT

ORLEANS PARISH

STATE OF LOUISIANA

NO: 2024 - 11714

SECTION: 3



CHERILYNNE BELL

VERSUS

IV WASTE, LLC

FILED: _____

_____
DEPUTY CLERK

### PETITION FOR DAMAGES

Petitioner Cherilynne Bell ("Bell") hereby files this Petition seeking damages against

defendant IV Waste, LLC ("IV Waste" or "Company") for hostile work environment based on

racial harassment, reprisal and retaliation in violation of Louisiana Employment Discrimination

Law ("LEDL") La. R.S. 23: 302 *et seq.* and the Louisiana Whistleblower statute La. R.S. 23:967,

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981, as

stated herein.

CLERK, CIVIL DISTRICT COURT
421 LOYOLA AVENUE · ROOM 402
NEW ORLEANS, LA 70112
504 - 407 - 0000

### PARTIES

Receipt Date        12/27/2024 4:48:00 PM
Receipt Number      991004
Cashier             cvaughn
Register            CDC Cash Register 1
Case Number         2024-11714

1. Petitioner Bell is a person of majority who resides in Orleans Parish, Louisiana.

She was employed with the Company from 2/28/2022 until 1/8/2024.

Grand Total         $510.50
Amount Received     $510.50
Balance Due         $0.00
Over Payment        $0.00

2. IV Waste is a limited liability company, licensed to do business in Louisiana, whose

mailing address is 730 S. Pierce St., New Orleans, LA. It is an employer who employs twenty or

more employees within this state.

Payment/ Transaction List

| | Charged | Paid | Bal |
|---|---|---|---|
| Petition for Damages | $444.50 | $444.50 | $0.00 |
| Judicial College | $0.50 | $0.50 | $0.00 |
| Building Fund Fee | $25.00 | $25.00 | $0.00 |
| Indigent Legal Fee | $10.00 | $10.00 | $0.00 |
| JSC | $30.50 | $30.50 | $0.00 |

### JURISDICTION AND VENUE

3. Jurisdiction is proper because Bell is a resident of Louisiana and IV Waste is a Louisiana

company. The venue is proper in because Bell worked for IV Waste at 730 So. Pierce St. in

Orleans Parish.

### FACTUAL BACKGROUND

4.

EXHIBIT "A"



VERIFIED
12-30-24

Bell was employed as an Accounts Payable Analyst. Her immediate supervisor was Julie Tufaro (General Manager) until July of 2023 and then Patrice Gunter. Tufaro reported to the owner, Sidney Torres. Gunter's immediate supervisor was Tufero.

5.

Bell's job duties included reconciling all Torres' and the Employer's credit card statements. Torres is the owner of the company. Bell balanced the Employer's bank account and paid all vendors. Bell would occasionally prepare company checks for employees of Defendant. Bell's job duties did not include assisting co-workers with obtaining contracts from the City of New Orleans to pick up the trash in the city (NOLA contracts).

6.

Tufero subjected Bell to a hostile work environment and harassed her based on Bell's race the entire time she was out with COVID by texting her and asking her on a daily basis when she would return to work. This harassment affected the terms and conditions of Bell's employment by pressuring her to return to work while still sick and still suffering from the virus. Tufero did not harass the non-African American employees in this manner.

7.

After Romano was promoted to the Human Resource manager over two African American employees who had more time in the company and more human resource experience, Bell complained about race discrimination to Tufaro, Gunther, and Torres. Bell filed an EEOC charge (initially called an inquiry) with the EEOC complaining of race discrimination.

8.

Torres called a meeting which resulted in Bell getting a raise in salary in exchange for dropping her EEOC charge.

9.

Tufero was visibly upset at the meeting when Torres announced that Bell would be getting a salary increase.

10.

On April 20, 2023, in a meeting with attorney Leslie Ehret and Nancy Romano, Bell complained to Ehret that Tufero made racial comments about Bell to a driver employed with the company. Ehret did not answer the question, but stated the meeting was not about Tufero, but

2

was about Bell.

11.

Tufero did racially degrading things. She passed around a picture she drew of a monkey, trying to be funny. Bell was offended.

12.

Tufero gave Bell work duties that were in addition to her regular job duties that she had been doing. These additional job duties included the duties that Romano had before she was promoted and duties from the customer service team, auditing the River Birch files.

13.

After Bell got her pay raise, Tufero incorrectly lowered her amount of raise until Bell pointed out the mistake.

14.

Tufero deducted some medical benefit charges from Bell's paycheck until Bell pointed out that she did not have any medical benefits through IV Waste.

15.

On or about June 27, 2022, IV Waste was awarded a New Orleans sanitation contract to take over garbage and recycling hauling in Lakeview, Gentilly and downriver neighborhoods.

16.

In July 2023, Torres offered Bell a monetary incentive in the form of a bonus to assist coworker AJ on the bidding for attempting to obtain an additional New Orleans sanitation contract.

17.

For assisting AJ with obtaining and additional New Orleans contracts for IV Waste, Torres agreed to pay Bell and other employees, bonuses of varying amounts for each new contract that was signed with New Orleans. Torres told Bell that he would pay her the amount of $2,000.00 for each additional New Orleans sanitation contract awarded to IV Waste.

18.

Bell did work on the bidding for the new NOLA contract by assisting AJ. She communicated with Sidney, Julie, and AJ often regarding updates about the bidding of the NOLA contract. After being informed of a contribution that Bell made to the bidding on the contract, Torres once responded in an email," That's why he assigned Bell to work with AJ on the bidding of this contract."

19.

3

In November of 2023, Sidney informed Bell that he was waiting until the NOLA Contract was signed before he gave her her bonus.

20.

On or about December 20, 2023, Mayor LaToya Cantrell of New Orleans met with Torres to officially sign the new contract for trash collection and recycling services with IV Waste for Service Area I in New Orleans.

21.

Torres gave other employees their bonuses for working on the NOLA contract, but Bell was not paid her bonus. For example, AJ was paid a $10,000.00 bonus. Pascuali was paid a $5,000.00 bonus. Tufero was also paid a bonus for the NOLA contract. AJ, Tufero and Pascuali are all non-African Americans.

22.

Bell's duties included writing checks for bonuses, including the checks for the NOLA contract bonus incentives that paid for the contract signed on December 20, 2023.

23.

Tufero told Torres not to pay Bell her bonus. Bell hereby claims use of the cat's paw theory to hold the decision maker(s) liable for the actions of Tufero, who influenced Torres' decisions about whether to pay Bell her bonus.

24.

On January 5, 2024, Bell sent Torres a text asking when she would get her bonus for the NOLA contract. Torres then called a meet with Jeff Freas, the new COO, Tufero and Patrice Gunther (Payroll Manager). Also, for the first time since she was employed at the company, Torres indicated it was inappropriate to text him. Torres and Bell had communicated via text before.

25.

On January 5, 2024, Bell met with Tufero, Freas, and Gunther in Gunther's office. Bell did not know that Torres was listening on the phone until she heard him screaming and yelling on the phone. He yelled that Bell was poison to the office, that Bell had filed an EEOC inquiry (referring to the EEOC inquiry filed on June 30, 2023), that Bell had an issue with Romano, that Bell didn't work weekends or after 5PM, and that Bell continued to complain about Tufero.

26.

4

Bell's response to Torres' outburst was to say that she did not appreciate the hostile work environment. Bell gave examples of the hostile work environment. Tufero, every Friday screaming when she arrived at work, would announce, "Happy Friday Bitches." Bell complained about this to Gunther every Friday and nothing is done. It got to the point where Bell would try not to be at her office at that time on Friday morning so she would not hear Tufero say that. Bell said that she didn't appreciate being harassed and treated differently. Bell complained that she was not paid her NOLA Bonus incentive. Bell asked Torres to not scream at her and to treat her with respect. Bell also told Torres that Lisa Scher, an employee, called Tufaro a racist. Bell complained that she was the only African American employee left in the accounting department.

27.

In this meeting of January 5, 2023, Tufero told Bell for the first time that she instructed Gunther to document in Bell's file on September 15, 2023, when she inquired about being paid her NOLA Bonus incentive. After Torres hung up Tufero asked Bell if she can get the old Cheri back and asked for a hug? Then they hugged. Bell returned to her desk and completed the workday. The statements of Bell in this meeting about not being treated fairly, being the only African American left in the department, not being paid her bonus, and about Tufero being a racist are protected activity.

28.

On Saturday, January 6, 2024, Bell filed another inquiry with the EEOC, complaining about racial discrimination and retaliation. This is a protected activity.

29.

On Monday, January 8, 2024, Bell emailed Tufero, Freas, and Gunther at 7:01 am to express her disappointment in the Friday meeting and that she filed another inquiry with the EEOC, complaining about racial discrimination and retaliation.

30.

About an hour later, Bell received a phone call from Gunther, requesting that Bell take the day off with pay. Bell asked Gunther to send her that request and the reason the company was requesting her to stay home. Gunther said that she could not do that, but she did not say anything further. Therefore, Bell went to work.

31.

Shortly after Bell arrived at her office for work that day, Gunther called Bell and told her that the company decided to terminate her employment. Bell was not given any reason for termination.

5

32.

As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages.

## CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT BASED ON RACIAL HARASSMENT VIOLATING THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW ("LEDL"), TITLE VII, AND 42 U.S.C. § 1981

33.

Paragraphs 1-32 above are incorporated herein as if stated in full.

34.

IV Waste subjected Bell to a hostile work environment based on racial harassment in violation of the LEDL La. R.S. 23:332(A), which prohibits intentionally discriminating against an employee with respect to her compensation, or her terms, conditions, or privileges of employment because of her race.

35.

Bell has timely exhausted her administrative remedies under the LEDL by giving notice to Torres in a letter dated March 19, 2024, that Bell intended to file suit under the LEDL. Bell has timely exhausted her administrative remedies under Title VII by filing a charge with the EEOC and obtaining a right to sue from the EEOC. There are no administrative remedies to be exhausted under § 1981.

36.

Bell belongs to a protected group. She is African American.

37.

She was subjected to unwelcome harassment, as stated above.

38.

The harassment was motivated by discriminatory animus (race), as stated above.

39.

The harassment affected a term, condition, or privilege of her employment, as stated above.

40.

IV Waste knew or should have known of the harassment and failed to take proper remedial action.

6

41.

The conduct by Tufero and Torres was so severe or pervasive as to create a hostile work environment.

## CAUSE OF ACTION: REPRISAL IN VIOLATION OF THE LOUISIANA WHISTLEBLOWER ACT ("LWA")

42.

Paragraphs 1-41 above are incorporated herein as if stated in full.

43.

Bell has timely exhausted her administrative remedies under the LWA by giving notice to Torres in a letter dated March 19, 2024, that Bell intended to file suit under the LWA.

44.

IV Waste terminated Bell's employment in reprisal after she, in good faith, advised IV Waste of violations of law, Bell disclosed to IV Waste and to the EEOC violations of state law, in violation of the LWA. The details of the reprisal are stated above.

45.

IV Waste terminated Bell's employment in reprisal after she, in good faith, advised IV Waste of violations of law, she provided information to the EEOC to conduct an investigation of race discrimination and retaliation by IV Waste in violation of the LWA.

46.

IV Waste violated Louisiana law through the prohibited workplace practice of subjecting employees to a workplace that is a hostile work environment based on race.

47.

Bell advised IV Waste of the violations.

48.

Bell then disclosed the prohibited practice to IV Waste and to the EEOC.

49.

Bell was terminated as a result of the disclosure of the prohibited practice to the EEOC.

## CAUSE OF ACTION: RETALIATION FOR ENGAGING IN A PROTECTIVE ACTIVITY IN VIOLATION OF TITLE VII AND 42 U.S.C. § 1981

50.

Paragraphs 1-49 above are incorporated herein as if stated in full.

7

51.

IV Waste retaliated against Bell for engaging in protected activities in violation of Title VII and § 1981.

52.

Bell has timely exhausted her administrative remedies under Title VII by filing a charge with the EEOC and obtaining a right to sue from the EEOC. There are no administrative remedies to be exhausted under § 1981.

53.

Bell had a reasonable belief that the IV Waste was engaged in unlawful employment practice when she filed her EEOC inquiry on June 30, 2023, and when she filed her second EEOC inquiry on January 6, 2024. These are two protected activities.

54.

Bell engaged in protected activity on the meeting on January 5, 2024, with Torres on the telephone, Tufero, Freas, and Gunther in Gunther's office. In this meeting, Bell complained about not being treated fairly, her supervisor being a racist, and her not getting a bonus that was promised her after all of the others on the project did get their bonuses.

55.

IV Waste terminated Bell's employment on January 8, 2024. This termination is an adverse employment action.

56.

There is a causal connection exists between at least one of the protected activities and the adverse employment action.

**WHEREFORE**, Cherilynne Bell prays that this Petition for Damages be deemed good and sufficient and that, after due proceedings are had, judgment be entered in her favor and against IV Waste, LLC. Bell further prays for damages including, but not limited to, compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, punitive damages, attorney fees, witness fees, court costs and interest thereon from the date of demand until paid, and all such other relief to which petitioner is entitled at law or in equity.

Respectfully submitted,

VICTOR R. FARRUGIA (#19324)

FARRUGIA LAW FIRM, LLC
1340 Poydras Street, Suite 2100
New Orleans, LA 70112
Telephone: (504) 525-0250
Facsimile (504) 293-0651
vfarrugia@farrugialawfirm.com

*Employment Law Specialist
and Labor Law Specialist
Certified by the Louisiana Board
of Legal Specialization*

Please serve:
IV Waste, LLC
Through its registered agent:
Alma Torres
1029 Esplanade #10
New Orleans LA 70116

9

**ATTORNEY'S NAME:**    Farrugia, Victor R 19324
**AND ADDRESS:**    1340 Poydras Street Suite 2100, New Orleans, LA 70112

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2024-11714 | DIVISION: N | SECTION: 08 |
|---|---|---|

### BELL, CHERYILYNNE

**Versus**

### IV WASTE, LLC

### CITATION

TO:    IV WASTE, LLC

THROUGH:    ITS REGISTERED AGENT: ALMA TORRES

   1029 ESPLANADE,  #10, NEW ORLEANS , LA 70116

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION FOR DAMAGES

 a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA 70112.

### ADDITIONAL INFORMATION

   Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

   ********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE********

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA December 30, 2024

**Clerk's Office, Room 402**
**Civil Courts Building**
**421 Loyola Avenue**
**New Orleans, LA 70112**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by _____**
**Lanora Winchester, Deputy Clerk**

---

### SHERIFF'S RETURN
#### (for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the within | On this _____ day of _____ _____ served a copy of the within |
| **PETITION FOR DAMAGES** | **PETITION FOR DAMAGES** |
| ON  **IV WASTE, LLC** | ON  **IV WASTE, LLC** |
| THROUGH:  **ITS REGISTERED AGENT: ALMA TORRES** | THROUGH:  **ITS REGISTERED AGENT: ALMA TORRES** |
| Returned the same day | by leaving same at the dwelling house, or usual place of abode, in the hands of |
| _____ No. _____ | _____ a person of suitable age and |
| Deputy Sheriff of _____ | discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating |
| Mileage: $ _____ | HIM/HER the said **IV WASTE, LLC** being absent from the domicile at time of said service. |
| _____ / ENTERED / _____ | Returned the same day |
| PAPER                RETURN | _____ No. _____ |
| _____ / _____ / | Deputy Sheriff of _____ |
| SERIAL NO.       DEPUTY       PARISH | |

Civil Code of Procedures
Article 1001

Art. 1001. Delay for answering

     A. A defendant shall file his answer within twenty-one days after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a discovery request with his petition, the defendant shall file his answer to the petition within thirty days after service of citation and service of discovery request.

     B. When an exception is filed prior to answer and is overruled or referred to the merits, or is sustained and an amendment of the petition ordered, the answer shall be filed within fifteen days after the exception is overruled or referred to the merits, or fifteen days after service of the amended petition.

     C. The court may grant additional time for answering.

     Acts 2021, No. 174, §1, eff. Jan. 1, 2022.

| ATTORNEY'S NAME: | Farrugia, Victor R 19324 |
|---|---|
| AND ADDRESS: | 1340 Poydras Street Suite 2100, New Orleans, LA 70112 |

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

| NO: 2024-11714 | DIVISION: N | SECTION: 08 |
|---|---|---|

**BELL, CHERYILYNNE**

**Versus**

**IV WASTE, LLC**

## CITATION

TO:  IV WASTE, LLC

THROUGH:  ITS REGISTERED AGENT: ALMA TORRES

1029 ESPLANADE, #10, NEW ORLEANS , LA 70116

**YOU HAVE BEEN SUED:**

You must either comply with the demand contained in the

PETITION FOR DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading within the delay provided by Civil Code of Procedure Article 1001. The mentioned article is noted on the back of this page for your reference. You may make your filing in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA 70112.

## ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may contact the New Orleans Lawyer Referral Service at https://neworleansbar.community.lawyer/. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through Southeast Louisiana Legal Services (SLLS) at 877-521-6242 or 504-529-1000.

**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA** December 30, 2024

**Clerk's Office, Room 402**
**Civil Courts Building**
**421 Loyola Avenue**
**New Orleans, LA 70112**

**CHELSEY RICHARD NAPOLEON, Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
**by** Lahora Winchester
Lahora Winchester, Deputy Clerk

## SHERIFF'S RETURN
(for use of process servers only)

PERSONAL SERVICE

On this _____ day of _____ served a copy of the within

**PETITION FOR DAMAGES**
**ON IV WASTE, LLC**
THROUGH: **ITS REGISTERED AGENT: ALMA TORRES**
Returned the same day
_____ No. _____
Deputy Sheriff of_____
Mileage: $ _____
_____/ ENTERED /_____
PAPER          RETURN
_____/_____/_____
SERIAL NO.    DEPUTY    PARISH

DOMICILIARY SERVICE

On this _____ day of _____ served a copy of the within

**PETITION FOR DAMAGES**
**ON IV WASTE, LLC**
THROUGH: **ITS REGISTERED AGENT: ALMA TORRES**
by leaving same at the dwelling house, or usual place of abode, in the hands of _____ a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM/HER the said **IV WASTE, LLC** being absent from the domicile at time of said service.
Returned the same day
_____ No. _____
Deputy Sheriff of_____

ID: 11529152                    Page 1 of 2

Civil Code of Procedures

Article 1001

Art. 1001. Delay for answering

A. A defendant shall file his answer within twenty-one days after service of citation upon him, except as otherwise provided by law. If the plaintiff files and serves a discovery request with his petition, the defendant shall file his answer to the petition within thirty days after service of citation and service of discovery request.

B. When an exception is filed prior to answer and is overruled or referred to the merits, or is sustained and an amendment of the petition ordered, the answer shall be filed within fifteen days after the exception is overruled or referred to the merits, or fifteen days after service of the amended petition.

C. The court may grant additional time for answering.

Acts 2021, No. 174, §1, eff. Jan. 1, 2022.